## RINALDI v. YOUNG.

### No. 6862.

United States Court of Appeals for the District of Columbia.

Decided June 14, 1937.

Suit by Michael Rinaldi against Frederick J. Young, receiver of the International Exchange Bank. From a decree and judgment for defendant, plaintiff appeals.

Carl A. Marshall, of Washington, D. C., for appellant.

Edward F. Howrey and Thos. S. Markey, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

This is an appeal from a decree and judgment of the United States District Court for the District of Columbia.

The appellant, who was plaintiff below, filed a bill of complaint against the receiver of the International Exchange Bank and Jerry Maiatico, alleging in substance that on June 27, 1932, plaintiff executed and delivered to the International Exchange Bank his promissory note in the sum of $3,454.93 indorsed by Jerry Maiatico and that at the time he was informed and assured by the president of the bank that this was merely a temporary arrangement and that within a short time after the termination of some litigation Maiatico would be substituted as maker of the note and there would be no liability upon plaintiff's part. Plaintiff further alleged that the litigation referred to had been terminated but that Maiatico had not taken up the note in question and plaintiff prayed for an injunction to prevent the receiver of the International Exchange Bank from attempting to enforce the note against him and that it should be delivered up and canceled or that Maiatico should be substituted for him as the maker thereof. These allegations were in substance denied by the defendant, the receiver of the International Exchange Bank, and the receiver set up the note as a valid obligation of the plaintiff and prayed for a judgment at law against plaintiff for the amount thereof. No objection was made by the plaintiff because of the fact that the defendant was undertaking by counterclaim to combine an action at law for judgment upon the note with the equity proceeding begun by the plaintiff.

A trial was had upon the evidence to the court and the court denied the right of plaintiff to the relief sought by him and entered judgment against plaintiff in favor of the bank for the amount due upon the note.

The facts disclosed by the testimony are in substance as follows:

On and prior to June 27, 1932 the International Exchange Bank held a promissory note signed by Maiatico payable to the bank in the sum of $3,454.93 secured by certain collateral second trust notes. At or about that time there was certain litigation pending concerning the title of the bank to the collateral notes. In order to "clear" such collateral, it was agreed between Maiatico and the president of the bank that his note should be put in a different form. Pursuant thereto Maiatico induced Rinaldi to execute and deliver to the bank the note now in suit. Maiatico and Rinaldi had known each other for many years and had signed notes for each other on several occasions prior to that time. On June 27, 1932, Rinaldi executed his promissory note whereby he promised to pay to the order of the International Exchange Bank on demand the sum of $3,-454.93 and Maiatico indorsed the note and the same was thereupon delivered to the bank.

The delivery of the note was made pursuant to an understanding between Maiatico, Rinaldi, and the president of the bank that it would be used to pay off the note of Maiatico then held by the bank; that as soon as the litigation concerning the collateral note was disposed of Maiatico would reinstate himself as the primary debtor and then the Rinaldi note would be canceled; that assurances were given Rinaldi by the president of the bank that he would not be called upon to make any payment upon the note. Upon delivery of the note in suit to the bank on June 27, 1932, Rinaldi's account in the bank was credited with the proceeds thereof. Rinaldi concurrently drew a check in like amount against his account payable to the bank which was accepted by the bank as payment of Maiatico's indebtedness. The records of the bank show, and the president of the bank testified, that the bank received no benefit from Rinaldi's note other than the payment by it of the indebtedness of Maiatico to the bank.

The International Exchange Bank was closed by order of the Comptroller of the Currency on July 14, 1932, about three weeks subsequent to this transaction. The note in suit was included in the assets of the bank taken over by the receiver.

Afterwards on October 28, 1932, the litigation referred to concerning the collateral note was decided favorably to Maiatico and the bank, the bill being dismissed for the reason that the plaintiffs were unwilling to proceed further with the case.

It also appears by the testimony that Maiatico subsequently went into bankruptcy.

Upon these facts the lower court held as follows:

"I find that the note in suit was given for the accommodation of Maiatico. See Neal v. Wilson, 213 Mass. 336, 100 N.E. 544.

"Rinaldi by giving his note held himself out as a debtor and is estopped as against the Receiver representing creditors to deny his liability. Vallely v. Devaney, 49 N.D. 1107, 194 N.W. 903."

The bill was thereupon dismissed and judgment for the amount of the note was entered in favor of the receiver of the bank against the plaintiff, Rinaldi.

We are of the opinion that the decree and judgment of the lower court are sustained by the record.

The plaintiff was induced to execute in due form and deliver to the bank the promissory note in question in order to accommodate Maiatico, who at the time was the bank's debtor. This was done when assurance was given plaintiff by the bank's president that the note would be taken care of by Maiatico and that plaintiff would not be called upon to pay nor to suffer any loss because of it. The note came into the possession of the receiver as part of the assets of the bank. The plaintiff, although very ignorant and ill-informed of the character of the transaction, knew that he was executing this note but relied upon the assurance given him by the president of the bank that he would not be called upon to pay it. It is a settled rule sustained by high authority that the president of a bank has no authority because of his office to give such an assurance to a debtor of the bank under such circumstances.

First National Bank of Whitehall v. Tisdale, 18 Hun, (N.Y.) 151, was an action upon a promissory note made by the defendant for the accommodation of the payee, and discounted by the plaintiff. The defendant there offered to prove that, when the note was made, the president of the plaintiff bank agreed that he should not be called on to pay it. The court held that the evidence was inadmissible (1) because the president had no authority to make such a promise; and (2) because it contradicted the written instrument. Affirmed 84 N.Y. 655.

"The president has no authority by virtue of his office to bind the bank by an agreement that parties to commercial paper shall not be personally liable thereon. Nor has he inherent power to release a person from existing liability; and this is especially true where he is one of the sureties. And even if it is within the authority of the president of a national bank to bind the bank by an agreement, with the acceptor of a draft which is discounted by the bank, not to enforce the draft against him, yet oral evidence of such an agreement is not competent for defense of a suit by the bank against the acceptor. The acceptance is an absolute promise to pay; it is not competent for the acceptor to contradict the written contract by proof of an oral agreement that he accepted the drafts upon the condition that he should not be called upon to pay them according to their tenor." 3 R.C.L. 422, § 69.

"It is a general rule recognized by the great majority of the cases, that the president or cashier or any other similar executive officer of a bank has no authority, simply by virtue of his office, to bind his bank by an agreement made with the maker or indorsers of commercial paper payable to the bank, that their liability on such paper will not be enforced. The rule applies whether the agreement is made before the paper has been signed, or after." State Bank v. Forsyth, 41 Mont. 249, 108 P. 914, 28 L.R.A.(N.S.) 501; see, also, Lyons v. Benney, 230 Pa. 117, 79 A. 250, 34 L.R.A.(N.S.) 105.

The present case resembles in principle the case of Federal Reserve Bank of Richmond v. Crothers (C.C.A.4th) 289 F. 777, 779, wherein was held that, where a bank president named Warburton appealed to defendant to give his $6,000 note to aid the president in averting the consequences of an overloan by the bank to the president's own business, and defendant gave such note, not to deceive the bank examiner, but intending that it should be a real asset of the bank until the bank president should be able to take it up, the note was supported by a good consideration, and defendant was estopped to deny liability thereon, it being immaterial that the president used it in substitution of a note of another friend given for a like purpose. The court said: "When Crothers, for Warburton's personal relief, intrusted to him his note, to be placed in the bank and counted by the bank examiner and the bank itself as an asset, he made Warburton his own agent for that purpose; and, the note having served the

purpose for which it was intended, Crothers cannot put upon the bank the duty of seeing that Warburton used it for his relief in the precise manner he had agreed. Collateral promises made by Warburton as an inducement to the accommodation to him were his personal promises, in no wise binding on the bank. Public policy requires that the maker be estopped from denying his liability under such circumstances." Citing cases.

See: Neal, Receiver, v. Wilson, 213 Mass. 336, 100 N.E. 544, Vallely, Receiver, v. Devaney, 49 N.D. 1107, 194 N.W. 903.

An indorsement made to a bank under an express written agreement from the president that the indorser should never be holden upon the indorsement would be inoperative as a fraud upon the bank; and a parol agreement to that effect could not be received to contradict or explain the indorsement unless to show fraud in the indorsement. Loomis v. Fay, 24 Vt. 240, 241.

In respect to the jurisdiction of the court to enter a judgment at law upon the cross-bill in the present case brought as a suit in equity, the appellant in his brief says: "Inasmuch as the answer to the cross-complaint was inadvertently omitted from the designation of the record, and this answer had questioned defendant's right to effective relief in this equity action, we appreciate that our position on that particular point may be difficult to maintain, so we will not press assignments of error numbered 4, 5, and 6."

These are assignments challenging the jurisdiction of the court to enter the judgment at law upon the cross-complaint. The question accordingly has not been discussed in this opinion. Clifton v. Tomb (C.C.A.) 21 F.(2d) 893; Smith Engineering Co. v. Pray (C.C.A.) 61 F.(2d) 687.

The decree and judgment of the lower court are affirmed, with costs.

Affirmed.